BENJAMIN WALLS, ADMINISTRATOR OF THE ESTATE OF MANUEL VERA, DECEASED *v.* WILLIAM WALKER *et als.*, CREDITORS OF THE ESTATE.

ADMINISTRATOR'S ACCOUNT.—If, in an annual account of an administrator, certain charges are rejected because the necessary vouchers are not produced, the administrator may include them in a subsequent account, and by producing vouchers have them allowed.

IDEM.—An annual account of an administrator is not conclusive, even as against the heirs and creditors, except as to such items as are included in it and actually passed upon by the Probate Court.

DUTY OF ADMINISTRATOR.—When an administrator has funds in his hands over the expenses of the funeral and last sickness of the intestate, and the allowance to his family, he should obtain an order at his next annual settlement to apply the same to the payment of debts.

CHARGING ADMINISTRATOR WITH INTEREST.—Where an administrator uses the funds of the estate in his private business, or retains them in his hands for an unreasonable length of time, to the prejudice of the heirs and creditors, he will be charged interest on the same in his settlement.

IDEM.—If the heirs or creditors seek to charge the administrator with interest on funds in his hands, they must show affirmatively that he kept the funds an unreasonable length of time, or used the same in his private business, or derived profit therefrom.

SETTLEMENT OF ESTATE.—An administrator must prosecute the settlement of an estate with all reasonable diligence.

ADMINISTRATOR TO ACCOUNT FOR USE OF DECEASED'S LAND.—If an administrator occupies and uses the real estate of his intestate, he becomes the tenant of the estate, and must not only account to the estate for the rental value of the land, but must, if he makes a profit, account to the estate for that also. If he sustains a loss, the loss is his; he must at all events pay the rental value of the land.

IDEM.—An administrator cannot be charged with the rental value of land of the estate after it has been sold by the Sheriff under a foreclosure sale. From that time the purchaser at the sale is entitled to the value of the use and occupation.

APPEAL from the Probate Court of Solano County.

The facts are stated in the opinion of the Court.

*William S. Wells*, for the Administrator.

*George A. Lamont*, and *Joseph McKenna*, for the Creditors.

By the Court, SANDERSON, J.:

This is a contest between an administrator and creditors in relation to the settlement of an annual account of the former. Both parties were dissatisfied with the result in the Probate Court, and have appealed. The appeal by the creditors will be first considered.

The case shows that at a former annual accounting, two items contained in the present account—one for cash paid the Register and Receiver of the Land Office at San Francisco, amounting to the sum of thirty-seven dollars and sixteen cents, and the other for cash paid to an attorney at Washington, for professional services rendered in the interest of the estate, amounting to the sum of twenty-five dollars—were rejected, or not allowed by the Court, not upon the ground, however, that they were not legal charges against the estate, but because the administrator was unable or failed

to produce the vouchers required by the two hundred and thirty-first section of the statute by which the settlement of estates of deceased persons is regulated. That at the present accounting the administrator produced the requisite vouchers, and the items in question were allowed by the Court. This allowance constitutes the first error assigned, it being claimed that the result of the former accounting was conclusive against the administrator as to such items.

In support of this view the two hundred and thirty-seventh section of the statute is cited, and also the case of *Clarke* v. *Perry*, 5 Cal. 58; but we fail to see how the point is sustained by either. Section two hundred and thirty-seven prescribes the effect of a settlement of an administrator's account as against "all persons in any way interested in the estate," viz: heirs, legatees, and creditors. We find nothing in this provision of the statute which precludes the administrator from bringing forward, in a succeeding annual account, or in his final account, such charges in his favor as may have been refused allowance at some former accounting, merely because the administrator failed, from any cause, to produce the technical proof required by the statute. On the contrary, the settlement of an annual account is not conclusive, even as against the heirs, legatees, and creditors, except as to such matters as were actually included in such former account, and directly passed upon by the Court. (Section 235.) The fact that the heirs, legatees, and creditors are thus expressly permitted to contest matters not included and passed upon in any former account, necessarily implies that the administrator is not precluded from going behind a former account, and bringing forward charges which, through inadvertence or oversight, may have been omitted. Charges admitted to be legal, but not allowed, merely because not proved in the appointed mode, certainly do not stand upon less meritorious grounds, and if the administrator may go behind a former account for the purpose of bringing forward charges of the former character, by parity he may do the like in respect to

the latter, and we find nothing in the statute which expressly precludes him from doing so.

The only remaining error assigned by the creditors presents the question whether the administrator ought to be charged interest upon certain funds belonging to the estate, which, as is claimed, were retained in his hands an unreasonable length of time, and used in his private business, and, therefore, not applied to the payment of the debts against the estate as soon as they might and ought to have been. We find ourselves, however, unable to reach the merits of that question, by reason of the failure of the appellant to furnish us with the necessary facts.

The case merely shows that letters of administration were issued in May, 1863. That in September following the administrator filed a report and account of sales of personal property, from which it appears he thereby received the sum of five thousand nine hundred and eighty-two dollars and forty-eight cents. That in May, 1864, at his first annual accounting, he had in hand the sum of four thousand four hundred and twenty dollars and eighty-five cents. That in May, 1865, at his second annual accounting, he had the sum of three thousand two hundred and eighty-four dollars and six cents. And in May, 1866, at his last annual accounting, he had the sum of five thousand and ninety-seven dollars and ninety-two cents. The present account was filed on the 7th of June, 1867. Why the estate has been kept so long in the hands of the administrator—nearly six years—and is still unsettled, the record fails to show. None of the annual accounts of the administrator, except the one under review, have been brought up; nor does the record contain any other matter by which this delay can be explained. Nor does it appear, in any form, what was or has been the condition of the estate during all this time, or why the administrator has kept these funds in his hands, and not, by leave of the Court, applied them in satisfaction of claims against the estate. The record fails to show either the value of the estate or the amount of the claims against it. If the estate

is not insolvent, it is not perceived how the creditors can be interested in this question of interest.  If it is solvent, the heirs would seem to be the only persons interested in pressing that question, for the creditors would get their money in either event.  It is suggested in the brief of counsel for the creditors that the estate is insolvent, but that such is the fact nowhere appears in the record.

The only light thrown upon the question of interest is found in the testimony of the administrator, and one Frisbie, as to how the money was kept and used; from which it appears that it was kept by the former on general deposit with the latter, but it does *not* satisfactorily appear whether the administrator used any portion of it in his private business, or in any way derived any benefit from it.  The Court found, however, that he did not use it in his private business, and received no benefit or profit from it, and there is nothing in the record which would justify us in disturbing this finding.

The only other ground upon which it is claimed that he ought to be charged with interest is the length of time during which he had the money in his possession without applying it to the payment of the debts against the estate, which time counsel assert to have been unreasonable.  We say *assert*, because there is nothing in the record showing whether the administrator neglected his duty in that respect or not.  When an administrator finds himself with funds not needed for the purpose of paying the expenses of the funeral and last sickness of the deceased, the allowance to his family, and the necessary current and prospective expenses of administration, he ought, as counsel contend, to report the fact to the Court at his next annual settlement, and obtain an order to apply it in payment of debts, (Sec. 243,) but he is at all times entitled to retain in his hands ample funds to meet the claims and expenses above mentioned.  (Sec. 242.)  But whether this administrator has failed in his duty in this respect it is impossible for us to say upon the case which counsel have brought here.  We cannot presume, from the

mere length of time in which he held this money in hand, that he could and therefore ought to have applied it to the payment of claims against the estate.   The facts and circumstances, in view of which we might have been able to determine that question, are not in the record.   Neither the testimony nor the findings disclose any facts or circumstances in explanation of the question.   The Court below has impliedly found that the administrator did not fail in his duty in that respect, and upon the record we cannot say that his finding was wrong.   From aught that appears, it may have been prudent, if not absolutely necessary, for him to retain this money in his hands to meet the exigencies of administration.   If not, the creditors should have made a showing to that effect and brought it here, which they have failed to do.   From the mere fact that he had, at various times, large sums in hand, we cannot say that he failed in the performance of his duty to the estate, especially in view of the fact that the Probate Court, which must have had a better knowledge of the matter than we can gather from the meagre record which has been brought here, has held that he did not.

The abstract proposition, for which counsel contend in this connection, that an administrator who uses the funds of the estate in his private business, or retains them in his hands for an unreasonable length of time, to the prejudice of the heirs and creditors, will be charged interest, is well settled.   He cannot be allowed to make any profit out of the estate, or retain its funds in his possession for an unreasonable time.   He must prosecute the settlement of the estate with all reasonable diligence, which requires him, whenever he finds himself with funds not needed for the purposes already suggested, to apply to the Court at his next annual accounting for an order of distribution, as provided in section two hundred and forty-three of the statute. (Secs. 217, 220; *Mosley* v. *Ward*, 11 Vesey, Jr., 581; *Ogilvie* v. *Ogilvie*, 1 Bradford, 356; *Griswold* v. *Chandler*, 5 N. H.

492; *Benson* v. *Bruce,* 4 Desassure, 463; *English* v. *Harvey,* 2 Rawle, 305; *Robinett's Appeal,* 36 Penn. St. 174.)

The objection made by the administrator upon his appeal to the order of the Court below, settling the account, relates to a year's rent of about two hundred and twenty-five acres of land belonging to the estate, with which he was charged, claiming that he was not chargeable therewith.

The case shows, in relation to this point, that, during the year 1866, the administrator cultivated the land in question, and raised thereon a crop of wheat; that the crop cost him four thousand four hundred and twenty-three dollars and ninety cents; that he sold it for four thousand one hundred and forty-five dollars and sixty-three cents—which was a reasonable price for that year—losing thereby the sum of two hundred and seventy-eight dollars and twenty-seven cents; that in the cultivation of this land he used the same care and skill which he exercised in the cultivation of his own land during the same year. That the rental value of the land during that year was four dollars and fifty cents per acre, and that *he could have rented it at four dollars per acre.* That the customary mode of renting land in that vicinity was for a share of the crop. That in the month of June of that year the land was sold by the Sheriff, under the foreclosure of certain mortgages executed by the intestate in his lifetime. That the administrator was engaged in harvesting the crop at the time the sale was made. That no redemption was made, and that at the expiration of six months the purchasers obtained their deeds. Upon these facts the Probate Court charged the administrator rent at the rate of four dollars per acre for the whole year.

It is claimed on the part of the administrator:

First—That, having received no rent, and, without fault on his part, derived no profit from the use of the land, he is not legally chargeable for rent or use.

Second—That, if liable at all, he is chargeable for use only up to the date of the mortgage sale, at which time he became liable for use to the purchasers.

Under the laws of this State an administrator is vested with the right to the possession of the real estate of his intestate as well as the personal, and his duties and liabilities in respect thereto are therefore of the same general character. As we have seen, if he puts the personal estate to his own private use, he is chargeable with the value of its use, or with the actual profits, if any, which the administrator has made by its use, at the election of the parties interested in the distribution of the estate, and, if a loss has ensued thereby, he is not only not entitled to be made whole, but is, notwithstanding, liable for use, for to so use the property of the estate is a breach of his trust, and the profits which he may have made are the earnings of the estate, and must go with it. Under the statute of this State it follows, by parity of reason, that an administrator is to be held to a like diligence in the management of the real estate and its issues, and in respect thereto to a like measure of accountability. If he occupies and uses it, he cannot be allowed to make any profit thereby, and, in any event, must account to the Probate Court for its rental value. If he occupies and uses it, he becomes, at least, the tenant of the estate, liable, in any event, for the value of its use and occupation, and, if he makes a profit, he becomes liable for that also at the election of the parties in interest. Such is the law of his relation. If, in this case, the administrator sustained a loss, the loss is his, and the hardship is no greater than a like result in the case of any other tenant. (Secs. 73, 114, 216.)

But, while the Probate Court did not err, for the reasons suggested, in charging the administrator for the value of the use and occupation, we think it erred in holding him liable for such use and occupation after the sale of the premises by the Sheriff. From that time the purchaser at the sale became entitled to the value of the use and occupation, as provided in section two hundred and thirty-six of the Practice Act. After that time the estate and the parties interested therein had no claim to the value of the use and occupation. (*McDevitt* v. *Sullivan*, 8 Cal. 592; *Harris* v.

*Reynolds,* 13 Cal. 514; *Kline* v. *Chase,* 17 Cal. 596; *Knight* v. *Truett,* 18 Cal. 113.) And the administrator, if he used and occupied the premises thereafter, was bound to account to the purchaser for the value of the use and occupation.

The settlement of the account is affirmed, except as to the item of rent; as to that item it is opened, and the Court below directed to apportion the value of the use and occupation in accordance with the rule announced in this opinion. The costs of both appeals must be taxed against the creditors.

So ordered and remittitur allowed forthwith.